[No. B050749. Second Dist., Div. Five. Oct. 25, 1991.]

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff and Appellant, v.
STITES PROFESSIONAL LAW CORPORATION, Defendant and Respondent.

## Counsel

Lewis, D'Amato, Brisbois & Bisgaard, David E. Reynolds and Timothy J. Watson for Plaintiff and Appellant.

Dave Lenny for Defendant and Respondent.

## Opinion

**TURNER, P. J.—**

### I. Introduction

National Union Fire Insurance Company of Pittsburgh, Pa. (National) appeals from a superior court order denying National's petition to confirm an arbitration award and awarding costs to the respondent, Stites Professional Law Corporation (Stites). The order is appealable pursuant to Code of Civil Procedure section 1294, subdivision (d). The trial court concluded that the attorney's fee dispute between National and Stites was not subject to arbitration pursuant to Business and Professions Code section 6200 et seq.[1] The trial court directed, "Judgment denying the petition is ordered entered for [Stites] for costs." We agree that the dispute between National and Stites was

---

[1] Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

Section 6200 provides in part: "(a) The board of governors shall, by rule, establish, maintain, and administer a system and procedure for the arbitration of disputes concerning fees, costs, or both, charged for professional services by members of the State Bar . . . . (b) This article shall not apply to any of the following: (1) . . . . (2) Claims for affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct, . . . . (3) Disputes where the fee or cost to be paid by the client or on his or her behalf has been determined pursuant to statute or court order. (c) Arbitration under this article shall be voluntary for a client and shall be mandatory for an attorney if commenced by a client. . . ."

not subject to arbitration under section 6200 et seq. Therefore, we affirm the order insofar as it denied National's petition. However, we find that it was error to award costs to Stites. Therefore, we reverse the order in that limited respect.

## II. BACKGROUND

National issued a "Directors and Officers Liability and Corporation Reimbursement" policy of insurance to Commercial Bank of California (Bank). The policy provided coverage for losses suffered by the Bank arising from any wrongful act by a director or officer of the Bank acting in that capacity, but only insofar as the officer or director would be entitled to indemnification by the Bank "for damages, judgments, settlements, costs, charges or expenses incurred in connection with the defense of any action, suit or proceeding . . . ." The policy also provided that "[n]o costs, charges and expenses shall be incurred without the Insurer's consent which shall not be unreasonably withheld . . ." and, "[t]he Insureds shall not be required to contest any legal proceedings unless counsel (to be mutually agreed upon by the Insureds and the Insurer) shall advise that such claim should be contested by the Insureds and the Insurers consent thereto, such consent not to be unreasonably withheld."

Anthony R. Bazurto (Bazurto), an assistant vice-president and cashier of the Bank, was sued by the Federal Deposit Insurance Corporation (FDIC) in July 1984, along with other officers and directors of the Bank, in connection with the failure of the Bank (the FDIC action). Bazurto retained Stites to represent him in the FDIC action. National agreed, subject to certain reservations of rights, to pay Bazurto's reasonable defense costs in the FDIC action. The FDIC action was settled in March 1986. Thereafter, National disputed the charges claimed by Stites for the defense of Bazurto.

National initiated arbitration of the fee dispute pursuant to section 6200 et seq. Stites refused to participate in the arbitration. In April 1987, the arbitrators issued an award in favor of National. The arbitrators found that the bills submitted by Stites to National were "unreliable, at best," and appeared to be "grossly excessive." In addition, the arbitrators found that "the services allegedly performed do not appear to have been necessary or reasonably required for the defense of Mr. Bazurto." The arbitrators concluded that some of the Stites billings were fraudulent. Because Stites had made no showing as to its reasonable fees and the arbitrators were unable to determine what fees were reasonably incurred, they found that National was not required to pay Stites any attorney's fees and was entitled to recover fees National had already paid to Stites.

National filed a petition to confirm the arbitrator's award. The trial court determined that Stites was Bazurto's "Cumis counsel" (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 375 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]). The trial court concluded that fee disputes between insurers and an insured's Cumis counsel were not subject to arbitration under section 6200 et seq.[2]

### III. DISCUSSION

The principal issues raised in this case are whether: (1) Stites could first raise the arbitrators' purported lack of subject matter jurisdiction in the trial court and (2) the dispute between National and Stites was subject to arbitration pursuant to section 6200 et seq.

#### A. *Lack of Subject Matter Jurisdiction Was Not Waived Nor Was Stites Barred From Raising the Issue in the Trial Court*

█ National asserts that the arbitrators' implied determination that they had jurisdiction to resolve the fee dispute was binding on the trial court and Stites waived any objection to the arbitrators' jurisdiction by failing to contest it in the arbitration proceedings. That contention fails. Jurisdiction means different things in different situations. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 287 [109 P.2d 942, 132 A.L.R. 715].) █ Lack of "jurisdiction" in its "strict sense" refers to a court's or other tribunal's power or authority over the subject matter of or the parties to a dispute. (*Id.* at p. 288.) Subject matter jurisdiction, in this case meaning the

---

[2]Section 6203, subdivision (b), provides for two methods of challenging an arbitration award entered pursuant to section 6200 et seq. First, an arbitration award becomes binding "upon the passage of 30 days after mailing of notice of the award, unless a party has, within the 30 days, sought a trial after arbitration . . . ." Section 6204, subdivision (c), provides in relevant part that if no civil action is pending after the award is returned and a party desires to litigate the matter in court: "[T]he trial after arbitration shall be initiated by the commencement of an action in the court having jurisdiction over the amount of money in controversy within 30 days after mailing of notice of the award. After the filing of such an action, the action shall proceed in accordance with the provisions of Part 2 (commencing with Section 307) of the Code of Civil Procedure, concerning civil actions generally." Second, a party who is dissatisfied with an arbitration award can litigate the propriety of the arbitration award in compliance with the normal provisions of law relating to enforcing, correcting, or vacating an arbitrator's award. Section 6203, subdivision (b), provides: "If no action is pending in any court, the award may be confirmed, corrected, or vacated by petition to the court having jurisdiction over the amount of the arbitration award, but otherwise in the same manner as provided by Chapter 4 (commencing with Section 1285) of Title 9 of Part 3 of the Code of Civil Procedure." The present litigation arose out of a petition to confirm the arbitrators' award as permitted by section 6203, subdivision (b). The procedure which was followed is found in Code of Civil Procedure section 1280 et seq. In the present case, Stites did not initiate a challenge to the arbitration award.

arbitrators' authority or power to adjudicate a certain type of fee dispute, cannot be conferred by consent, waiver, or estoppel. (*People* v. *Chadd* (1981) 28 Cal.3d 739, 757 [170 Cal.Rptr. 798, 621 P.2d 837]; *In re Griffin* (1967) 67 Cal.2d 343, 346-347 [62 Cal.Rptr. 1, 431 P.2d 625]; *Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668].) Lack of subject matter jurisdiction can be raised at any time, even for the first time on appeal. (*DeTomaso* v. *Pan American World Airways, Inc.* (1987) 43 Cal.3d 517, 520, fn. 1 [235 Cal.Rptr. 292, 733 P.2d 614]; *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union* (1968) 69 Cal.2d 713, 721 [73 Cal.Rptr. 213, 447 P.2d 325].) ▪▪▪ Applying those principles to the present case, there has been no showing that the question of the arbitrators' jurisdiction to decide the fee dispute was raised or considered in the arbitration proceedings. But even if the arbitrators had specifically determined that they did have jurisdiction, that finding would not have been binding on the trial court.

Trial courts have the independent power to set aside an arbitration award under very limited circumstances. Code of Civil Procedure section 1286.2, subdivision (d), is one of the very limited situations where a court may refuse to enforce an arbitration award. Code of Civil Procedure section 1286.2, subdivision (d), provides in relevant part: "Subject to Section 1286.4, the court shall vacate the award if the court determines that . . . (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted . . . ." Citing Code of Civil Procedure section 1286.2, subdivision (d), in *Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 691 [72 Cal.Rptr. 880, 446 P.2d 1000], the California Supreme Court held that a trial court may vacate an arbitration award if the " 'arbitrators exceeded their powers.' " It is well established that an arbitrator has the power to decide issues "so long as they are a part of the 'controversy' which is subject to arbitration." (*Marcus* v. *Superior Court* (1977) 75 Cal.App.3d 204, 210 [141 Cal.Rptr. 890].) In *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elect. Co.* (1972) 28 Cal.App.3d 556, 564 [104 Cal.Rptr. 733], the Court of Appeal concluded, "[C]ourts will vacate an award where the arbitrator exceeded his [or her] powers and the award cannot be corrected without affecting the merits. [Citation.]" For example, in *Delta Lines, Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960, 968-969 [136 Cal.Rptr. 345], the court reversed an arbitration award because "the arbitrator decided an issue that was entirely outside the scope of the submission agreement." In *Cobler* v. *Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 532-533 [265 Cal.Rptr. 868], the court refused to enforce an arbitration award where the arbitration agreement did not extend to permit determination by an arbitrator of emotional distress claims. In *National Indemnity Co.*

v. *Superior Court* (1972) 27 Cal.App.3d 345, 347 [103 Cal.Rptr. 606], an uninsured motorist arbitration agreement provided for submission to an arbitrator of disputes as to whether the insured was "legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured . . . ." The insurer at the arbitration convinced the arbitrator to determine whether fraudulent misrepresentations rendered the policy which contained the uninsured motorist arbitration clause voidable. The arbitrator concluded that but for the fraudulent misrepresentations which allowed for rescission of the policy the insured would be entitled to damages. The superior court vacated the award because the question of whether the policy could be rescinded was outside the scope of the arbitration agreement. The Court of Appeal noted, "the trial court properly vacated the award as rendered . . . ." (*Id.* at p. 349.) Clearly, Code of Civil Procedure section 1286.2, subdivision (d), allows a trial court to vacate an arbitrator's implied or expressed determination that she or he has the jurisdiction to determine matters when they are outside the scope of an arbitration agreement. The same reasoning would necessarily apply to an arbitrator's decision when an award has been rendered outside the scope of statutes permitting or requiring arbitration. Section 6203, subdivision (b), explicitly incorporates the provisions of Code of Civil Procedure section 1285 et seq. Accordingly, the trial court had the authority to determine whether the arbitrators' award was improper because it was not authorized by section 6200 et seq.

National cites *Manatt, Phelps, Rothenberg & Tunney* v. *Lawrence* (1984) 151 Cal.App.3d 1165, 1171 [199 Cal.Rptr. 246], for the proposition that the arbitrators had the authority to determine their own jurisdiction and their finding on this question is reversible only if the finding "cannot be shown to be a 'rationale [*sic*] construction' of the law.' " *Manatt, Phelps* is inapposite. In that case, the plaintiff law firm filed a lawsuit against the defendant clients seeking to recover unpaid attorney's fees. The defendant clients requested binding arbitration of the dispute pursuant to section 6200 et seq. and the judicial action was stayed. After two arbitration hearings had already been conducted, the defendant clients purported to file an answer and cross-complaint in the judicial action. The clients then argued that the filing terminated the arbitration pursuant to section 6201, subdivision (d).[3] The arbitrators disagreed. The subsequent award in favor of plaintiff law firm was confirmed by the trial court. On appeal, Division One of this appellate

---

[3]Section 6201, subdivision (d), provides: "A client's right to request or maintain arbitration under the provisions of this article is waived by (1) the commencement of an action or the filing of any pleading by the client seeking judicial resolution of a dispute to which this article applies, or (2) seeking affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct."

district concluded that the arbitrators' construction of section 6201, subdivision (d), was not an irrational construction and therefore could not be disturbed. The issue which was before the arbitrators, and the decision thereon which was upheld by the appellate court, did not involve the arbitrators' jurisdiction of the subject matter of the dispute. There was no issue concerning the applicability of Code of Civil Procedure section 1286.2, subdivision (d), as in the present case.

█ National also argues that Stites was barred under the principles of res judicata and collateral estoppel from relitigating the question of the arbitrators' jurisdiction in the trial court. The doctrines of res judicata and collateral estoppel apply only when a final judgment on the merits has been rendered. (7 Witkin Cal. Procedure (3d ed. 1985) Judgment, § 211 et seq., pp. 648-649; see *Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910-911 [226 Cal.Rptr. 558, 718 P.2d 920].) When, as here, a judgment is still open to direct attack by appeal or otherwise, it is not final and the doctrines of res judicata and collateral estoppel do not apply. (*Ibid.*) The question of whether the arbitrators had subject matter jurisdiction of the present fee dispute was not waived by Stites and Stites was not barred from raising the issue in the trial court.

B. *The Arbitrators Did Not Have Subject Matter Jurisdiction of The Dispute*

Whether the arbitrators had subject matter jurisdiction of the present fee dispute raises two questions: first, is arbitration under section 6200 et seq. limited to attorney's fee disputes between attorneys and their clients, and second, was National a client of Stites? We answer the first question in the affirmative, and the second question in the negative.

1. *Section 6200 et seq. governs fee disputes between attorneys and their clients only.*

█ To ascertain the Legislature's intent in enacting section 6200 et seq. we turn to the words of the statute (*DeLaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]) and give them "the meaning they bear in ordinary use." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) In addition, we consider each section of the statute in the context of the statute as a whole. (*Ibid.*) When, as here, the statutory language is clear and unambiguous " 'there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.]" (*DeLaney* v. *Superior Court, supra,* 50 Cal.3d at p. 798.)

In enacting section 6200 et seq., the Legislature created a system "for the arbitration of disputes concerning fees, costs, or both, charged for professional services by members of the State Bar . . . ." (§ 6200, subd. (a).) By necessary implication, this section refers to arbitration of disputes between attorneys and their clients *to whom they have rendered professional services.* The statute excludes claims for malpractice against an attorney. (§ 6200, subd. (b)(2).) Arbitration under section 6200 et seq. is "voluntary for a client and . . . mandatory for an attorney if commenced by a client." (§ 6200, subd. (c).) Section 6201 requires an attorney who sues his or her client to recover fees to give the client written notice of the client's right to arbitration. The statute speaks repeatedly in terms of a lawyer's lawsuit against a client and a client's right to arbitration. Section 6202 addresses the disclosure of attorney-client communications or the attorney's work product. Read as a whole, the statutory scheme unquestionably applies to fee disputes between attorneys and their clients, and is limited to such disputes. The question arises, therefore, whether National was a client of Stites.

### 2. *National was not Stites's client*

The trial court found that National was not a client of Stites's because Stites was Cumis counsel for Bazurto. We need not decide whether the label "Cumis counsel" applies in this case. Because arbitration pursuant to section 6200 et seq. is limited to fee disputes between attorneys and their clients, it is sufficient to determine whether National was a client of Stites's. In the usual insurer-attorney-insured relationship, the insurer has a duty to defend the insured and hires counsel to provide the defense. The insurer controls the prosecution of the defense. So long as the interests of the insurer and the insured coincide, they are both the clients of the defense attorney and the defense attorney's fiduciary duty runs to both the insurer and the insured. (See *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc., supra,* 162 Cal.App.3d at p. 364, fn. 3.)

The insurance policy in the present case imposed no duty to defend upon National. Rather, it provided that National would indemnify the Bank for losses incurred by it, including attorney's fees, in the defense of actions against its officers and directors. The policy also provided that no defense costs could be incurred without National's consent, National and the insured must agree upon the defense attorney to be employed, and National's consent to contesting an action against an insured must be obtained. Therefore, National retained some limited control with respect to the defense of the client under the policy at issue here. However, the insurance policy principally obligated National to reimburse the insured for the costs of the defense. Moreover, National's duty to indemnify ran to the insured and

Stites's duty to defend ran to the insured, but Stites was not hired by and had no duty to act as an attorney on behalf of National. Under the provisions of the insurance policy issued to the Bank, National had no right to actually control the litigation of the defense. These facts do not coincide with the usual tripartite relationship of insurer-attorney-insured where the insurer, in fulfillment of its duty to defend, hires defense counsel and controls the prosecution of the defense. Therefore, we find there was a rational basis for concluding that National was not Stites's client and because arbitration pursuant to section 6200 et seq. applies only to attorney-client fee disputes, the trial court could reasonably refuse to confirm the arbitration award.

## C. *It Was Error to Award Costs to Stites*

■ As noted in the introduction to this opinion, the trial court ordered entry of a judgment for Stites "for costs." However, section 6203, subdivision (c), provides that a court confirming, correcting, or vacating an arbitration award under section 6200 et seq. may not award attorney's fees or costs to a party who did not appear at the arbitration hearing.[4] It is uncontested that Stites did not appear at the arbitration hearings in this case. Therefore, it was error to award costs to Stites.

## IV. DISPOSITION

The order of April 13, 1990, is affirmed insofar as it denied the petition of National Union Fire Insurance Company of Pittsburgh, Pa. to confirm the arbitration award. The order of April 13, 1990, is reversed insofar as it

---

[4]Section 6203, subdivision (c), provides: "A court confirming, correcting, or vacating an award under this section may award to the prevailing party reasonable fees and costs including, if applicable, fees or costs on appeal, incurred in obtaining confirmation, correction, or vacation of the award. The party obtaining judgment confirming, correcting, or vacating the award shall be the prevailing party except that, without regard to consideration of who the prevailing party may be, *if a party did not appear at the arbitration hearing* in the manner provided by the rules adopted by the board of governors, *that party shall not be entitled to attorney's fees or costs upon confirmation, correction, or vacation of the award.*" (Italics added.)

awarded costs to Stites Professional Law Corporation. Each side shall pay its own costs on appeal.

Boren, J., and Grignon, J., concurred.

A petition for a rehearing was denied November 18, 1991.